In re: Stephen McDonald, Debtor.

Case No.: 20-10755-j7

Heather McDonald, Plaintiff

v.　　　　　　　　　　　　　　　　　　　　　　Adv. Proceeding No.: 20-1028

Stephen McDonald, Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On August 26, 2020, the Court held a final hearing in this matter. The parties appeared pro se. After consideration of the evidence presented at the final hearing and being otherwise sufficiently informed, the Court concludes that Debtor's obligations to Plaintiff as set forth in the marital settlement agreement between them in connection with the dissolution of their marriage are non-dischargeable under 11 U.S.C. § 523(a)(15).[1]

### Findings of Fact[2]

<u>The Marriage Dissolution and Marital Settlement Agreement</u>

1.　　The First Judicial District Court for the State of New Mexico entered a final decree of dissolution of Plaintiff's and Debtor's marriage on May 8, 2019. Pltf. Exh. 2.

2.　　Plaintiff and Debtor agreed to divide their assets and debts in a marital settlement agreement ("MSA") filed on May 8, 2019. Pltf. Exh. 3.

3.　　The MSA is a contract between Plaintiff and Debtor.

---

[1] Unless otherwise specified, all statutory references are to 11 U.S.C.
[2] *See* Fed. R. Bankr. P. 7052(a)(1).

4. In the final decree of dissolution of marriage, the state district court found that the MSA between Plaintiff and Debtor entered into in connection with the dissolution of the marriage, which was filed on May 8, 2019, was "fair and reasonable and should be adopted by the court." Pltf. Exh. 2.

5. The MSA includes the following clause in section II(E):

Legal promise. We understand that if either of us fails to pay the debts we have promised to pay, the other party may end up making that payment. If that happens, the party who should have paid promises to repay the other party, including any other extra costs caused by the failure to pay, such as attorney fees, late fees, and interest charged by the creditor. Pltf. Exh. 3.

6. In the MSA, Debtor agreed to pay the full amount of the debt owed on the account ending in 3370 owed by Plaintiff and Debtor to Capital One ($1,698.54). Pltf. Exh. 3.

7. In the MSA, Debtor agreed to pay the full amount of the debt owed on the account ending in 6582 owed by Plaintiff and Debtor to Discover ($1,932.61). Pltf. Exh. 3.

8. In addition, Debtor agreed in the MSA to pay the debt owed by Plaintiff and Debtor to the Internal Revenue Service ("IRS") ($7,373). Pltf. Exh. 3.

9. In the MSA, Plaintiff and Debtor agreed to divide the amount owed by Plaintiff and Debtor to Green State Credit Union[3] for a Thor Chateau RV, as follows. Pltf. Exh. 3.

(a) Debtor agreed to pay Green State Credit Union $18,475.11 in monthly payments of $418.18. Pltf. Exh. 3.

(b) Plaintiff agreed to pay Green State Credit Union $85,000, in monthly payments of $900. Pltf. Exh. 3.

---

[3] The parties referred to this creditor as the University of Iowa Credit Union in the MSA. The name of the credit union was changed to Green State Credit Union in April 2019. The Court will therefore refer to this creditor as Green State Credit Union.

10. The parties agreed that each party would transfer funds for the monthly payment to Green State Credit Union into a Wells Fargo account ending in 4865 and that payments to Green State Credit Union would be made from that account. Pltf. Exh. 3.

11. Plaintiff and Debtor agreed that, once the total amount owed was paid, Plaintiff would receive title to the RV. Pltf. Exh. 3.

Debtor's Bankruptcy Case

12. On April 7, 2020, Debtor filed a petition for bankruptcy relief under chapter 7 of the Bankruptcy Code. Pltf. Exh. 1; *see* Bankruptcy Case No. 20-10755.

13. Debtor listed the debts to Capitol One, Discover, the IRS, and Green State Credit Union (collectively, the "Creditors") on his bankruptcy schedules as follows. Pltf. Exh. 1.

| Creditor | Amt on MSA dated May 8, 2019 | Amt on Debtor's Pet. dated April 7, 2020[4] | Difference |
|---|---|---|---|
| 1. Capital One | $1,698.54 | $1,463.16 | $232.38 |
| 2. Discover | $1,932.61 | $968.49 | $964.12 |
| 3. IRS | $7,373 | $5,169.28 | $2,203.72 |
| 4. Green State Credit Union | $103,465.11 | $94,348.90 | $9,116.21 |

14. Debtor stated in his schedules that the debt to the IRS was an unsecured, priority debt owed by Debtor only. Pltf. Exh. 1.

15. Debtor stated in his schedules that the Green State Credit Union loan is secured by the Thor Chateau RV and that Debtor and another are co-debtors as to that loan. Pltf. Exh. 1.

16. On Schedule H, Debtor listed Plaintiff and Mac McDonald, Debtor's father, as co-debtors to Green State Credit Union. Pltf. Exh. 1.

17. Although Plaintiff is a co-debtor on the amounts owed to Capital One, Discover, and the IRS, Debtor did not list Plaintiff as a co-debtor for those debts. Pltf. Exh. 1.

---

[4] Approximately 10 months after the MSA was filed.

18. On August 5, 2020, the Court granted Debtor a discharge under § 727. Bankruptcy Case No. 20-10755, Doc. 20.

The Adversary Proceeding

19. On May 18, 2020, Plaintiff filed a complaint ("Complaint") seeking a determination that Debtor's obligation to her under the MSA to pay the amounts owed to the Creditors are non-dischargeable under § 523(a)(15) and that Debtor's obligations to the Creditors are non-dischargeable. Doc. 1.

20. In the Complaint, Plaintiff also sought the "costs of suit herein incurred." Doc. 1. At the final hearing, Plaintiff stated that the only cost for which she seeks reimbursement is the filing fee of $350.00.

21. In his Answer to the Complaint, Debtor did not dispute the existence of the debts to the Creditors. Doc. 5.

22. In the Answer, Debtor asserted that this Court is not the proper venue for the Complaint. Doc. 5.

23. Debtor argued at the final hearing that Plaintiff is not entitled to reimbursement of the filing fee because the adversary proceeding was unnecessary and could have been avoided.

Payments to the Creditors and Payment Negotiations Between the Parties

24. On the advice of counsel, Debtor did not make any payments to the Capital One account ending in 3370 after February 2020. Pltf. Exh. 4.

25. On the advice of counsel, Debtor did not make any payments to the Discover account ending in 6582 after January 2020. Pltf. Exh. 5.

26. Plaintiff asserted at the final hearing that she made payments on the Capital One and Discover accounts to bring both accounts current.

27. Before Plaintiff filed the Complaint, both Debtor and Plaintiff proposed to the other party reasonable plans to pay Capital One and Discover. In both instances, the other party rejected the proposed plan for reasons they each in good faith believed were valid.

28. While both Plaintiff and Debtor acted in good faith, both parties could have avoided this adversary proceeding with additional communication.

29. Debtor has made and agreed to continue to make payments to the IRS as provided in the MSA. Dtr. Exh. A.

30. Debtor transferred $418.18 per month into Wells Fargo account ending in 4865 from May 10, 2019 to July 10, 2020. Dtr. Exh. B.

31. At the parties' request, at the end of the hearing the Court facilitated the following agreements between the parties with respect to certain of their obligations under the MSA so the parties would not need to return to state court to resolve any further disputes regarding these matters.

(a) Plaintiff agreed to provide to Debtor, by September 8, 2020, with copies of the monthly credit card statements for the Capital One and Discover credit cards for the period from May 19, 2019 through the present. The statements will be provided by email.

(b) The parties agreed that Debtor may contact the credit card companies to attempt to negotiate a lower balance in order to pay the accounts in full. Debtor agreed to make every effort to pay the accounts in full within 60 days of the date of the hearing (i.e. by October 26, 2020).

(c) The parties agreed to work together with respect to Debtor's parents' payment of Debtor's portion of the obligation on the RV to the Green State Credit Union.

(d) Consistent with the terms of the MSA, the parties agreed to work together to take the other person's name off any joint credit card account and close any joint credit card accounts once paid in full.

32. The Court scheduled a status conference in this matter for November 10, 2020 at 10 a.m.

## Conclusions of Law

A. Debtor's objection to venue is denied. This Court is the proper venue for Plaintiff to seek a determination whether a debt is dischargeable in Debtor's bankruptcy case pending before this Court.

B. Section 523(a)(15) excepts from discharge in a Chapter 7 case a debt "to a . . . former spouse . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement . . ." that is not a domestic support obligation under § 523(a)(5). *See also In re Shepard*, No. 7-07-10497 SA, 2008 WL 5157898, at *1 (Bankr. D.N.M. June 30, 2008) (unreported) (discussing the elements of § 523(a)(15)).

C. In the MSA with Plaintiff, Debtor promised Plaintiff that he would pay certain amounts owed by both Debtor and Plaintiff to the Creditors, as specified in the MSA,.

D. Hence, the MSA created an obligation running from Debtor to Plaintiff to pay those amounts. *In re Wodark*, 425 B.R. 834, 838 (10th Cir. BAP (Colo.) 2010) (stating that "[t]he fact that the underlying obligation was payable to [a bank] does not mean that [the debtor] did not incur a separate obligation to [the debtor's former spouse] that is, in itself, a nondischargeable debt.").

E. By signing the MSA, Debtor also agreed that, if he did not meet his obligations under the MSA, Plaintiff may be required to pay the Creditors instead.

F. Debtor also agreed that, in the event Plaintiff paid any obligation he should have paid under the MSA, he would repay Plaintiff the amount she paid plus costs resulting from his failure to pay.

G. Debtor's obligations to Plaintiff under the MSA are distinct from his obligations to each of the Creditors. *See Wodark*, 425 B.R. at 840 (holding that a debt incurred in connection with a separation agreement was excepted from discharged under § 523(a)(15) even though the debtor's direct obligation to the third-party creditor was discharged).

H. Notwithstanding the fact that Debtor's debts to Capital One and Discover were discharged, Debtor's obligation to Plaintiff to pay the Creditors under the MSA is a debt owed to a former spouse incurred in the course of a divorce or separation and, therefore falls within the exception to discharge found in § 523(a)(15).

I. Consistent with the MSA, Debtor is obligated to reimburse Plaintiff for any amount she paid to Capital One and Discover that should have been paid by Debtor under the terms of the MSA.

J. Under Federal Rule of Bankruptcy Procedure 7054(b)(1), the Court may award costs to the prevailing party in an adversary proceeding.

K. To the extent Plaintiff sought a determination that Debtor's obligations to her set forth in the MSA are not dischargeable, Plaintiff is the prevailing party.

L. The Court has broad discretion regarding cost awards under Rule 7054(b)(1). *In re Whitaker*, No. 7-13-11395 JA, 2017 WL 354314, at *11 (Bankr. D.N.M. Jan. 24, 2017). *See also In re Borges*, No. 11-10-12800-NLJ, 2013 WL 1856437, at *2 (Bankr. D.N.M. May 2, 2013) *aff'd,* No. ADV 10-01170, 2014 WL 1364956 (10th Cir. BAP Apr. 8, 2014) (stating that "the bankruptcy court will award prevailing party costs only if there is some reason that tips the

scales toward the prevailing party other than simply the fact that that side won. In other words, either the losing party was a bad actor or the plaintiff ran up its costs in bad faith.").

  M. A court's discretion under Fed. R. Bankr. P. 7054 whether to award costs is broader than a court's discretion under Fed. R. Civ. P. 54(d)(1), which does not apply in adversary proceedings. "In bankruptcy proceedings, unlike other matters litigated under federal law, there is no presumption that costs be taxed to the unsuccessful party." *In re Inv. Bankers, Inc.*, 135 B.R. 659, 670 (Bankr. D. Colo. 1991), aff'd, 161 B.R. 507 (D. Colo. 1992), aff'd, 4 F.3d 1556 (10th Cir. 1993). Under Rule 7054, "[a]n award of costs to a successful plaintiff is discretionary with the Court in all instances. It is essentially compensatory, but, like pre-judgment interest, is not warranted in all cases on this basis alone." Id.

  N. Under Fed. R. Bankr. P. 7054, a court may apportion costs among the parties. *Cf. Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234-35 (10th Cir. 2001) (discussing cost awards under Fed. R. Civ. P. 54(d)(1) and noting that a court may in its discretion "apportion costs among the parties or . . . reduce the size of the prevailing party's award to reflect . . . partial success" and that some courts have denied costs when "the litigation was thought to be the result of fault on the part of both parties").

  O. The filing fee to commence this adversary proceeding is a cost the Court may tax under Fed. R. Bankr. P. 7054. *See* 28 U.S.C. § 1920 (stating that a court may allow costs for "[f]ees of the clerk").

  P. The Court will grant in part and deny in part Plaintiff's request for reimbursement of the $350 filing fee paid to commence this this adversary proceeding.

## CONCLUSION

For the foregoing reasons, Debtor's obligation to Plaintiff under the MSA to pay the Creditors provided in the MSA is excepted from discharge under § 523(a)(15). Debtor shall be required to pay $175 to Plaintiff in partial reimbursement of the filing fee paid to commence this adversary proceeding. The Court will enter a separate judgment consistent with the foregoing findings and conclusions. *See* Fed. R. Bankr. P. 7058(a).

_____
Robert H. Jacobvitz
United States Bankruptcy Judge

Date Entered on Docket: September 11, 2020

Copy To:

Heather McDonald
Plaintiff
1597 Alamo Dr. SPC 173B
Vacaville, CA 95687

Stephen McDonald
Defendant/Debtor
4325 68th Street, Lot 699
Riviera Beach, FL 33404